## EDWARD McCALLUM v. JAMES DAVIDSON.

### *Negligence—Malice—Evidence—Instructions.*

A charge which permits the jury in a negligence case to infer malice on the part of the defendant towards plaintiff's employer in setting a car in motion on defendant's own land, which ran against one which plaintiff was unloading, and injured him, from the fact that defendant believed at the time of the accident that plaintiff's employer was owing him for rent, to recover which he afterwards commenced a suit, cannot be sustained.

Error to Bay. (Cobb, J.) Argued February 15 and 16, 1893. Decided April 21, 1893.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*McDonell & Hall,* for appellant.

*Pratt, Van Kleeck & Gilbert,* for plaintiff.

GRANT, J. Defendant is the owner of block 47 of the village of Salzburg,—now a part of West Bay City,—and also of the right of way for a railroad switch across lots 5 and 6, of block 37. A corporation known as the Crump Manufacturing Company owned a mill and lumber yard on block 37. Between the two is Ninth street,—a public highway. A side track of the Michigan Central Railroad runs diagonally across block 37 and the street, and, after striking the south line of the defendant's land, curves so as to run in a direct line across his premises. On the north side of the Crump Manufacturing Company's block are inclosed lumber sheds. The street is 66 feet wide. A plat of the premises is found on page 383, from which the situation can be clearly understood.

The numbers along the side track indicate stations. Station 11 is the lowest point in the side track. From this point there is an up-grade of 5 inches to the 100 feet for 187 feet to the north, on defendant's land, at which point a down-grade begins. From the north side of Ninth street to the point where the grade changes is 121 feet. These sheds had never been used for storing lumber from this side track previous to the accident. The rails and ties of the side track were owned and put in by the railroad company, but the side track itself was for the benefit and accommodation, mainly, of the defendant, though used by the Crump Manufacturing Company and the railroad company as they had occasion.

On the 13th of August, 1891, the Crump Manufacturing Company had caused two cars loaded with lumber, called "shorts," to be placed between the lumber sheds for the purpose of being unloaded and placed in the sheds. The northern end of the northernmost car stood about even with the north line of the sheds. The lumber was piled lengthwise upon the cars in three tiers, each about nine feet long. Plaintiff and two other employés of the Crump Manufacturing Company, named Fogelsanger and Finn, were ordered on the morning of the 14th to unload the two cars of lumber into the shed. Previous to the placing of these two cars upon the side track, the railroad company had run two other cars in upon it,—one empty, and the other loaded with logs; the empty car being south of the other. On the morning of the 14th this empty car stood with its south end about half-way across the street, which was at that time but little used. Before commencing to unload, plaintiff and other employés of the Crump Company pushed this empty car further to the north in order to make room for the storage of the first car after it was unloaded, while they unloaded the second. Plaintiff's witnesses testify that this car was pushed onto the defendant's

land from 15 to 20 rods, where they blocked one wheel in order to prevent its coming down the grade. In this distance they are mistaken, because, as already stated, the grade extends only 121 feet on his land. No reason is given why they pushed it so far. They would have had ample room, even if the car had not been pushed entirely out of the street.

Plaintiff and his co-employés went to work about 7 o'clock. They had unloaded the north tier of the north car through an opening in the shed about 16 feet from the crossing. Desiring to move the car a few feet further to the north, to facilitate the unloading, the three went behind the car to try to move it. Plaintiff took a board about 5 feet long, which he was using under the wheel, while the other two were pushing. They were thus engaged from 15 to 25 minutes, when the empty car came down the grade, struck the car which they were trying to move, threw plaintiff down, and, it is claimed, injured him. Plaintiff himself was not a witness, for the reason that he was confined to his bed from sickness claimed to be the result of the accident, and was mentally incompetent to testify. Plaintiff was at the time standing with the end of the board near his breast. Finn testified that he (plaintiff) was thrown upon his back, his knees thrown up, and that he was shoved about three feet. Fogelsanger, who was next to plaintiff, testified that, when the car struck, plaintiff took one step back, and fell against the other car, and went down in a sitting position; that he didn't think their car touched him; that he helped him up; that he (Fogelsanger) immediately crawled through under the draw-bars; and that plaintiff followed him. Finn and Fogelsanger, who were plaintiff's witnesses, both agree that their position behind the car was not discernable to any one out in the street, or upon the block across the

street, and that they heard a warning outcry just about as the car struck. On coming out from behind the car, they saw defendant and his foreman, Arnold, standing to the north. Neither plaintiff nor his companions stated to defendant or Arnold that any injury was done, or that any one was hurt, nor was there then anything to indicate that any one was hurt. Plaintiff and his companions were ignorant of the presence of defendant and Arnold in the vicinity, and defendant and Arnold were equally ignorant of the presence of the plaintiff and his companions. There was nothing in the situation to indicate to the defendant that anyone was there, or that any work had been going on there that morning, or that the Crump Company had begun to unload the cars.

Defendant was engaged at the time in leveling the ground on block 47, at which work he had employed 25 men and 3 or 4 teams. It had been raining so that they could not work, but the rain ceased about 9 o'clock, at which time they were again proceeding to work. The empty car stood in their way, and, for the purpose of removing it, Arnold took out the block from under the wheel, and started the car down the grade. It was customary to let cars down in this manner. The distance between the two cars was between 125 and 150 feet. The reverse curve, and the sand which was accustomed to accumulate between the rails and the plank at the crossing, tended to impede the speed. The momentum of the car was not such as to be dangerous to the car below, or the lumber upon it. Defendant and Arnold approached the lot from the east. Arnold went to the west side of the car, defendant remaining upon the east side. After the car started, defendant walked down a short distance towards the street, and Arnold went to the street. He testified that, when the moving car was about 30 feet from the

other, he saw a man step out from behind that car with a board in his hand; that he cried out, "Get out of the way!" but the man stepped back in between the cars; that he (Arnold) then took hold of the car, and held back on it as hard as he could; that it was going very slowly; and that he held back on it until it got within 5 or 6 feet of the other car. Defendant heard the cry of warning given by Arnold, which was the first intimation that he had that any person was behind the car.

The alleged ground of recovery is that the defendant "wickedly, wantonly, maliciously, and negligently caused and permitted this car to run against the other." In order to show malice, willfulness, and wickedness on the part of the defendant, plaintiff was permitted to show by Mr. Crump that he and defendant's son had had some difficulty about some hose. The language of the witness was, "There was a little difficulty between me and young Mr. Davidson." He was also permitted to show that, subsequent to this accident, defendant brought suit against the Crump Company for rent which he claimed to be due him. Crump was permitted to testify that the misunderstanding was about the use of the land on which the track was. Plaintiff's counsel then asked him to state what the circumstances were of that misunderstanding, to which Crump replied: "I don't know as there was any particular misunderstanding. We never had any very heavy quarrels." The files in that suit, which was tried before a justice of the peace, were offered and admitted for the purpose of showing when the suit was commenced, and that there was a difficulty that finally culminated in the suit. Defendant then offered to show on cross-examination the correspondence which passed between the parties in regard to the subject of the suit, its final determination, and the nature of the controversy, for the purpose of rebutting any inference of malice the jury were permitted to draw from the mere fact

that the parties had a lawsuit. This the judge refused, holding that the merits of that controversy were not of the slightest consequence, and that the only object of showing the existence of the controversy was to show the state of mind existing in the defendant at the time of this accident. At the close of the evidence the court required plaintiff's attorneys to state the ground upon which they sought to recover, to which they replied that it was upon the maliciousness, wantonness, and wickedness of the act complained of. Upon this theory the case was submitted to the jury, who rendered a verdict for the plaintiff. There is but little conflict in the evidence, and that relates mainly to the time when the warning was given by Arnold; all admitting that such warning was given.

The court should have directed a verdict for the defendant. There is not a *scintilla* of evidence in the record to indicate that the defendant had any malice towards the plaintiff or his co-employés, whom he did not know, or towards the Crump Manufacturing Company, or any of its members. Defendant was not shown to have uttered one word of ill-feeling, or to have done any act indicating such feeling, towards any of the parties concerned. The charge of the court to the jury was a judicial declaration that they might infer malice from the fact that defendant believed that the Crump Manufacturing Company owed him for rent, and that subsequent to the accident he instituted a suit therefor. The jury were thus permitted, from this fact alone, to characterize as wicked, malicious, and wanton an act which of itself had no tendency to injure any of the property of the Crump Manufacturing Company, and which in itself was lawful, and done in the usual manner. No argument is necessary to show the fallacy of such a proposition. Defendant owed no duty towards the plaintiff, unless he knew, or ought to have known, that he was behind the car. There was no one

upon the street, and nothing to indicate to the defendant that the two cars of lumber were placed there to be unloaded, nor does it appear that he even knew that they belonged to the Crump Manufacturing Company. For all that appears upon the record, as the situation appeared to the defendant, they might have been temporarily side-tracked for the accommodation of the railroad company. He had a right to remove the car from his land for a legitimate purpose. The removal was not accompanied by any recklessness or want of care. He was not bound to assume either that the loads of lumber belonged to the Crump Manufacturing Company, or that they were placed there for the purpose of being unloaded, or that any one was behind the first car, engaged in the attempt to move it,—a task of no little difficulty, for the three men had been trying for some time, but without success.

The judgment must be reversed, and a new trial granted.

This disposition of the case renders it unnecessary to notice the other assignments of error.

HOOKER, C. J., McGRATH and LONG, JJ., concurred. MONTGOMERY, J., did not sit.